UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**SHERWOOD RUSSELL,**<br><br>Defendant. | Case No. 25-cr-210-1 (CRC) |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

On May 4, 2025, Defendant Sherwood Russell illegally possessed a firearm, equipped with a machinegun conversion device and an extended magazine. During the commission of this offense, the defendant struck a police officer with his vehicle, assaulted his co-defendant, resisted arrest, and threatened an additional police officer. He has accepted responsibility and is now before the Court to be sentenced for his unlawful possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). For the following reasons, the government respectfully requests that the Court impose a sentence of **33 months of imprisonment**, to be followed by three years of supervised release.

### I. FACTUAL BACKGROUND

The factual proffer to which the defendant agreed as part of his September 4, 2025, guilty plea (ECF No. 22) establishes the following undisputed facts:

On May 4, 2025, at approximately 6:46 PM, Metropolitan Police Department (MPD) officers of the Third District responded to a call for a domestic disturbance at the 2000 block of 11th St. Northwest, Washington, D.C. Officers observed Defendant Sherwood Russell ("Russell") grabbing co-defendant Lounia Fowler by the arms. Russell then entered his vehicle, a white Tesla with New Jersey tags.

Officer Jose Moreno ("Officer Moreno") instructed Russell to exit the vehicle. Instead, Russell turned the wheel toward Officer Moreno and accelerated the vehicle, striking Officer Moreno in the leg. Russell then turned the wheel the opposite way and reversed the vehicle, striking a small fence on the sidewalk. Russell exited the vehicle. Officers tackled Russell as he attempted to flee from them on foot. Russell clenched his arms in a way that it was not possible for officers to place handcuffs on him. While on scene receiving medical assistance, Russell told Officer Ayman Ibrahim something to the effect of, "I'm going to punch you in the face and knock you out."

Officers looked into Russell's vehicle and notice a spilled open container of alcohol in the front seat. While conducting a probable cause search of the vehicle for more open containers of alcohol, officers recovered a firearm in the center console of the vehicle.

The firearm was later determined to be a Glock 23 .40 caliber pistol, bearing serial number BVVF386. The firearm contained one round of .40 caliber ammunition in the chamber, and 25 additional rounds in the high-capacity magazine, with a total capacity of 29 rounds. The firearm was modified with a "Giggle Switch" that converted the semi-automatic firearm into a fully automatic weapon. The firearm was fully functional, designed to expel a projectile by the action of explosive, and had a barrel length of less than 12 inches, and was capable of being fired by use of one hand.

Crime scene technicians swabbed the firearm and magazine for DNA, and swabs were taken from the buccal tissue of Russell. An examination was conducted on the collected swabs, and according to the report,

> The DNA profile obtained from [the gun] was interpreted as a mixture of four individuals with at least one male contributor.
>
> Obtaining this mixture profile is approximately 5.13 billion times more likely if the DNA originated from Sherwood Russell and three unknown, unrelated individuals than if the DNA originated from the four unknown, unrelated individuals.
>
> The DNA profile obtained from [the magazine] was interpreted as a mixture of four individuals with at least one male contributor.
>
> Obtaining this mixture profile is approximately 49.9 trillion times more likely if the DNA originated from Sherwood Russell and three unknown, unrelated individuals than if the DNA originated from four unknown, unrelated individuals.

Russell's DNA likelihood ratio fell into the report's highest likelihood ratio of "Very Strong Support," as it was over 1,000,000 for both the gun and the magazine.

A criminal history check showed that Russell was previously convicted on June 10, 2011 in D.C. Superior Court case 2010-CF2-022486 of: Burglary One While Armed Gun, Assault with a Dangerous Weapon Gun (ADW), Unlawful Entry, and Obstructing Preventing/Interfering with Reports/Requests for Assistance from Law Enforcement.

Russell was sentenced to 120 months' confinement on the burglary conviction and 30 months' confinement on the ADW conviction. Accordingly, on May 4, 2025, Russell knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year and that he was prohibited from possessing firearms. No firearms or ammunition are manufactured within the District of Columbia and therefore the recovered firearm and ammunition traveled in and affected interstate commerce.

## II. PROCEDURAL HISTORY

On July 25, 2025, a federal grand jury returned a two-count indictment charging Defendant Russell with one count of Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) (Count One) and Defendant Fowler with one count of Carrying a Pistol without a License (Outside Home or Place of Business), in violation of D.C. Code § 4504(a)(1) (Count Two). (ECF No. 1).

On September 4, 2025, the defendant pleaded guilty pursuant to a negotiated agreement (ECF No. 21). Under the agreement, the defendant pleaded guilty to Count One. (ECF No. 21). The government also agreed not to bring charges against the defendant for the assaults of a Metropolitan Police Department Officer and Lounia Fowler, a threat to a Metropolitan Police Department Officer, or resisting arrest. (ECF No. 21 at 2). The government and the defendant agreed that under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G"), the defendant's Base Offense Level is 20 under U.S.S.G. §2K2.1(a)(4)(B). (ECF No. 21 at 2). As the defendant accepted responsibility and provided timely notice of his intent to enter a guilty plea, the government and the defendant agreed that the defendant is entitled to a 3-level reduction under U.S.S.G. §3E1.1. (ECF No. 21 at 2-3). The Final Offense Level is, thus, 17. (ECF No. 21 at 3).

Sentencing is scheduled for Thursday, December 11, 2025, at 10:00 a.m.

## III. LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial

4

benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>     (i) issued by the Sentencing Commission . . .; and
>     (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement –
>   (A) issued by the Sentencing Commission . . . and
>   (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume

that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## IV.   SENTENCING GUIDELINES CALCULATION

### A. The Defendant's Final Offense Level is 17.

The base offense level for the defendant is 20 under U.S.S.G. §2K2.1(a)(4)(B), because, as discussed more fully below, he possessed a semiautomatic firearm that is capable of accepting a large capacity magazine, the firearm is described in 26 U.S.C. § 5845(a), and the defendant was a prohibited person at the time of the offense.

### B. The Defendant's Criminal History Category is II, and His Guideline Range Is Thus 27 to 33 Months' Imprisonment.

The government concurs with Probation's assessment of the defendant's criminal history as set forth in the Draft Presentence Investigation Report (PSR) at pages 8-24. As reflected in the Draft PSR and in the table on the next page, the total criminal history score for the defendant is three (3), establishing a Criminal History Category of II.

With a Criminal History Category of II and a Final Offense Level of 17, the defendant's Guideline range is 27-33 months' imprisonment.

| Offense | Date | Sentence | Points |
|---|---|---|---|
| 2010 CF2 0022458 (DC Superior Court) Unlawful Possession of a Firearm (Prior Conviction) CPWL UF | Offense date: 12/1/2010 Sentence: 6/10/2011 | 24 months, 3 years supervised release | 0 (§4A1.2(e)) |
| 2010 CF2 022486 (DC Superior Court) Burglary One While Armed Gun, Assault with a Dangerous Weapon Gun, Unlawful Entry, Obstruction | Offense date: 12/1/2010 Sentence: 6/10/2011 | 120 months, 5 years supervised release | 3 (§4A1.1(a)) |
| 2008 DVM 001038 (DC Superior Court) Simple Assault Attempted Threats | Offense date: 4/30/2008 Sentence: 6/18/2008 | 180 days fully suspended | 0 (§4A1.2(e)) |
| CT062098X (PG County) Carry Handgun | Offense date: 5/12/2006 Sentence: 11/20/2009 | 3 years, 1 year suspended, 1 year probation | 0 (§4A1.2(e)) |

V.  **THE GOVERNMENT'S SENTENCING RECOMMENDATION**

   A.  **The Nature and Circumstances of the Offense**

The defendant pled guilty to illegally possessing a firearm, equipped with a machinegun conversion device and an extended magazine. This firearm was particularly dangerous, as it was capable of firing all 26 rounds in its magazine within mere seconds. *See* Exhibit 2 (ATF Glock Switch Demonstration video). While this offense is possessory in nature, this Court has warned against discounting the inherent danger associated with loaded firearms. "Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *Blackson*, No. 23-cr-25, 2023 WL 1778194, at *7 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). This is particularly the case because the firearm was fully loaded and ready to fire. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling.") And Congress recently indicated how seriously these offenses should be taken when it increased maximum sentences for 18 U.S.C. 922(g) from 10 years to 15 years.

Further, arguments concerning "mere possession" ignore the scourge of gun violence in our community. A loaded firearm is a deadly weapon. It has the ability with a single pull of the action to end a life. A firearm can escalate a mundane disagreement or a petty offense into a deadly encounter. And the reason law enforcement targets the possession of firearms prior to the commission of a crime is because once an individual makes the decision to produce a firearm and pull the trigger, law enforcement is powerless to intervene.

The circumstances of the instant offense are particularly concerning, as the defendant assaulted his co-defendant, struck a police officer with his vehicle, resisted arrest, and then

threatened an additional officer who was providing him medical treatment. The fact that the defendant was acting violently within close proximity of a loaded automatic weapon heightened the danger posed of this particular offense. *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence). This created an incredible danger to both law enforcement and the public, as this firearm was capable of firing all 26 rounds in its magazine within mere seconds.

In sum, this was a dangerous offense justifying a 33-month term of incarceration.

### B. The History and Characteristics of the Defendant

The defendant's unlawful possession of a firearm in this case is particularly troubling considering his violent criminal history.

***First Degree Burglary, Assault with a Dangerous Weapon (gun), and Subsequent Obstruction (2010-CF2-22486)***

On August 24, 2010, the defendant went to the home of the mother of his child, D.P. The defendant entered the apartment without permission while holding a gun, as he observed D.P. with an unidentified male. The defendant told the male to leave. After the male left, the defendant assaulted D.P., hitting her with a silver gun on her arm. The defendant then proceeded to choke D.P. and hit her in the face. When their two-year-old son came into the room and asked him to stop, the defendant left.

The defendant returned to D.P.'s home on September 6, 2010, at which time he, again, entered without her permission. Amidst an argument, D.P. announced that she was going to call the police. When D.P. made that announcement, the defendant snatched the phone from her hand, broke it in half, and threw it. The defendant was not arrested until the police discovered the

defendant with a similarly described silver handgun after a shooting, just months later, on December 1, 2010.

### *Carrying a Pistol without a License (2010-CF2-22458)*

On December 1, 2010, at approximately 2:20 a.m., MPD officers heard multiple gunshots in the area of Half and N Street, SW. When the officers responded to the area where they heard the gunfire, they observed the defendant exiting the alley on a bicycle. The defendant began to flee once officers activated their emergency equipment. After a chase, officers detained the defendant and recovered a silver .45 caliber handgun with the slide locked to the rear. The slide was in a position that indicated that all of the ammunition had been fired. Four .45 caliber shell casings matching the defendant's pistol were found at the mouth of the alley that runs south of N Street, S.W., just across the street from the residence that took fire. That same night, roughly a block away, police found a man shot in the thigh and foot. Unfortunately, he either could not or would not identify the shooter.

On March 10, 2011, the defendant pled guilty in D.C. Superior Court case number 2010-CF2-22458 to Carrying a Pistol Without a License, Unlawful Possession of a Firearm (Prior Conviction), and Possession of an Unregistered Firearm in the December 1, 2010, incident.

On March 22, 2011, the defendant pled guilty to the indictment in D.C. Superior Court case number 2010-CF2-22486, to charges of First-Degree Burglary while Armed, Assault with a Dangerous Weapon ("ADW"), Unlawful Entry, and Obstructing, Preventing, or Interfering with Reports or Requests for Assistance from Law Enforcement Agencies to the August 24, 2010, and September 6, 2010, incidents.

On June 10, 2011, the court sentenced the defendant in both cases. For the defendant's

armed burglary and assault of D.P. in 2010-CF2-22486, the court sentenced the defendant to 120 months of confinement for First Degree Burglary, 30 months of confinement for ADW, three months of confinement for unlawful entry, and three months of confinement for obstruction. For the firearm conviction in 2010-CF2-22458, the court sentenced the defendant to 24 months of confinement for Unlawful Possession of a Firearm (Prior Conviction), 14 months of confinement for Carrying a Pistol without a License, and 12 months of confinement for Possession of an Unregistered Firearm.

### *Domestic Violence Assault and Threats (2008-DVM-001038)*

On April 11, 2008, the defendant got into an argument with T.T., a woman with whom he shared a child in common. During the argument, the defendant slapped T.T. in the face and said, "I'm going to get you" while making a finger hand gesture as if he had a gun. On June 11, 2008, the defendant pled guilty in D.C. Superior Court case number 2008-DVM-001038 to Simple Assault and Attempted Threats and was sentenced to 180 days' incarceration, execution of sentence suspended as to all, and one-year supervised probation pursuant to the Youth Rehabilitation Act.

### *Illegal Possession of a Handgun (CT062098X)*

On April 3, 2007, the defendant pled guilty in Prince George's County, Maryland Circuit Court case number CT062098X to Possession of a Handgun. The defendant was sentenced to three years' incarceration, with all but two years suspended. The defendant's probation in this case was terminated unsatisfactorily in June 2020.

### C. The Need for the Sentence Imposed

While in the community, the defendant has repeatedly engaged in domestic violence and

firearms offenses. The instant offense is not an isolated incident, but a continuation of his criminal behavior. Past periods of incarceration have done little to deter the defendant from possessing firearms and engaging in violence. A significant term of imprisonment is necessary to incapacitate the defendant to protect the community from his crimes.

### D.  The Need to Avoid Unwarranted Sentencing Disparities

Although the government's sentencing recommendation is higher than both the average (25 months) and median (27 months) lengths of imprisonment for defendants with a Final Offense Level of 17 and a Criminal History Category of II, the government's recommended sentence – a term of 33 months' imprisonment – would not result in unwarranted sentencing disparities due to the specific nature of the offense and the defendant's criminal history.

Regarding the specific characteristics of the instant offense, the firearm was equipped with a machinegun conversion device and an extended magazine. Either of those specific characteristics would have resulted in a base offense level of 20 under U.S.S.G. §2K2.1(a)(4)(B), yet the Guidelines do not account for a weapon with *both* characteristics. *See United States v. Alzamora*, No. 23-2445, 2024 U.S. App. LEXIS 7365, 2024 WL 1329971, at *4 (7th Cir. 2024). Further, the defendant's conduct in this case was not the mere possession of a firearm but also involved assaults of both his co-defendant and a police officer. This combination of a demonstrated willingness to engage in physical violence and the possession of an extremely lethal firearm that was primed for use, justify a sentence at the higher end of the applicable Guideline range.

Although the defendant's criminal history category is only at level II, his scoring offense further justifies a top of the Guideline range sentence, as it was a violent burglary in which he pointed a gun at a woman, and then proceeded to grab, strangle, and smack her. (Draft PSR at 16).

The Guidelines, specifically contemplate an occasion where a violent burglary does not result in a higher offense level:

> There may be cases in which a burglary involves violence, but does not qualify as a "crime of violence" as defined in §4B1.2(a) and, as a result, the defendant does not receive a higher offense level or higher Criminal History Category that would have applied if the burglary qualified as a "crime of violence." In such a case, an upward departure may be appropriate.

U.S.S.G. § 4B1.2, Application Note 4. Although the government is not advocating for an upward departure; the nature of the defendant's criminal history, specifically, this violent burglary he committed against D.P. on August 24, 2010, in front of their two-year-old child, nevertheless demands a sentence at the top of the applicable Guideline range.

Regarding the government's disparate sentencing recommendations for Defendant Russell and Defendant Fowler, the government is requesting a more severe sentence for Defendant Russell, as he is convicted of a more serious offense,[1] and due to his violent conduct during the offense, and his significant criminal history. Defendant Fowler has no criminal history, and she did not strike a police officer with a vehicle or assault her co-defendant during the incident. As such, a more severe sentence for Defendant Russell is warranted.

## VI.    CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Defendant Russell to a term of 33 months' imprisonment to be followed by three years of supervised release.

---

[1] Defendant Russell is convicted of violating 18 U.S.C. § 922(g)(1), which carries a term of imprisonment of 15 years. Defendant Fowler, however, is convicted of D.C. Code § 4504(a)(1), which carries a maximum term of imprisonment of five years.

13

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        UNITED STATES ATTORNEY


By:  /s/ *David B. Liss*
     DAVID B. LISS
     Special Assistant United States Attorney
     D.C. Bar No. 90017629
     United States Attorney's Office
     601 D Street, N.W.
     Washington, D.C. 20530
     Telephone: 202-680-4025
     Email: David.liss2@usdoj.gov